951 F.2d 349
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
John F. ELKINS, Plaintiff-Appellant,
v.
McLACHLAN DRILLING CO., Defendant-Appellee.
 No. 90-2283.
 United States Court of Appeals, Sixth Circuit.
 Dec. 26, 1991.
 
 Before KENNEDY and BOGGS, Circuit Judges; and LIVELY, Senior Circuit Judge.
 PER CURIAM:
 
 
 1
 Plaintiff John Elkins appeals the jury verdict and judgment for the defendant drilling company in this diversity personal injury action. Elkins alleges several evidentiary errors, and that the verdict was against the weight of the evidence. For the reasons set forth below, we AFFIRM the decision of the District Court.
 
 I.
 
 2
 This case involves an accident on an oil drilling rig. The rig is in the basic shape of a tripod tower, with each leg being made up of scaffold-like metal girders. The rig in question was being used to lower a pipe into a shaft drilled into the ground. A cable system running between the ground and the apex of the rig was used to hoist the forty foot pipe sections off the ground and into a vertical position.
 
 
 3
 Plaintiff was employed as a "stabber" at the drill site in the Upper Peninsula of Michigan. The stabber's job is to position himself up in the rig over the hole and align the pipe sections as they are lifted into the vertical position necessary for them to be screwed together and lowered into the drilled hole. The stabber maintains this position by the use of a "stabbing board" and a "belly band." A "stabbing board" is some form of plank, such as a two-by-four, that extends between the girders on each side and provides the worker a platform to rest on and walk about between the sides of the rig. A "belly band" is a harness system tied to the girders on each side and allows the worker to lean out over the hole and position the pipe properly.
 
 
 4
 The hoist mechanism used to lift the pipe sections is a complicated hydraulic system that is run by a "driller" from the ground. Various workers attach a pipe section on the ground to the cable system, and the driller raises it to the vertical position above the hole, where the stabber guides it into position. Integral to this hoist system is the "traveling block," which is a large steel slab through which various pulleys and cables attach. The traveling block apparently travels with the cable as a section of pipe is raised. If the pipe section snags on something while being raised, the driller is to stop the hoist mechanism. If the driller does not realize there is a snag, and continues the pressure on the cables in the system, the traveling block is pulled out of its normal ascent trajectory. The system then becomes strained until either something breaks or the snag frees. If the pipe breaks free, the tension in the cables and the improper position of the various pieces causes the traveling block to suddenly release from its position outside its normal vertical path. When this happens, and the evidence indicated that it happens with some regularity, the traveling block then swings like a pendulum bob within the rig tripod, traveling in a three dimensional arc. If the swinging traveling block is at the requisite height, it therefore can strike the stabber or the stabbing board.
 
 
 5
 Plaintiff has alleged that on January 25, 1987, while working as a stabber on a rig for which McLachlan Drilling Company was the primary drilling contractor, he was injured when the traveling block swung outside its normal trajectory and crashed into him and his stabbing board. He alleged that the collision was in part due to the negligence of the driller operating the controls of the hoist system. A jury returned a verdict for the defendants, and plaintiff has appealed. He contends that the verdict was against the weight of the evidence, thus meriting a new trial at a minimum, and that the trial court committed reversible errors in the denial of a proffered missing witness instruction, and in denying the admissibility of evidence relating to the current status of the rig.
 
 II.
 
 6
 A. Verdict Against the Weight of the Evidence
 
 
 7
 Plaintiff contends that the verdict should be set aside as being against the weight of the evidence. We disagree. Plaintiff's own witnesses testified that it is not particularly unusual for pipe sections to become snagged as they are raised. They also testified that such occurrences can happen without negligent conduct on the part of the drilling crew. Plaintiff's evidence tended to show that the drill operator acted in accordance with the industry standards with respect to observing the tracking of the pipe sections. Plaintiff further conceded that the drill operator did everything correctly once it was realized that the pipe had sprung free and the traveling block was swinging.
 
 
 8
 Plaintiff has admitted that he was not paying attention to the hoist system as it was ascending, but rather was distracted with trying to tie a second safety belt. He did not notify the drill operator below that he would be indisposed and unable to react to the raising of a pipe section. Plaintiff's witnesses further testified that most stabbers stand in the back of the rig to avoid exactly the sort of accident that occurred here. The only evidence offered from which even an inference of negligence was possible was plaintiff's own unsubstantiated allegations of excessive speed in the raising of the pipe and the mere occurrence of the accident.
 
 
 9
 Finally, plaintiff has conceded that he continued to work a full shift as a stabber after the accident. Evidence from one of plaintiff's own doctors indicated that he was capable of working, and that although he may have been in some pain, it was not debilitating, as alleged. In light of the foregoing, we cannot say that the jury verdict denying recovery was against the clear weight of the evidence.
 
 B. The Missing Witness Jury Charge
 
 10
 Plaintiff contends that it was reversible error for the District Court to deny the submission of a proposed jury instruction. The charge would have instructed the jury that it could presume that the testimony of two of defendant's employees who were listed as potential witnesses but never called, the driller[1] and the toolpusher at the site, would in fact have been adverse to the defendant's case. The District Court ruled that it could not conclude that the witnesses were not equally available to both parties, and therefore declined to admit the charge.
 
 
 11
 We see no error with respect to the denial of the charge with respect to either of these witnesses. The missing witness charge is only applicable in the first instance to those witnesses with some form of particularly valuable information. The parties are not obligated to call each and every person who has any knowledge of any information remotely relevant to the case. The toolpusher would only have been able to testify to issues relating to the stabbing board. Since plaintiff has conceded that the stabbing board has no relevance to the claims at issue here, the testimony would not have aided the trier of fact in any way. We cannot say it was reversible error, therefore, to deny an adverse presumption from the failure to elicit such testimony.
 
 
 12
 The testimony of the driller is a more complicated issue, inasmuch as the driller could be presumed to know more than anyone about his actions in guiding the hoist system. The defense included the driller on the list of witnesses expected to be called, but ultimately did not call him.[2] The witness was in court throughout the course of the trial, pursuant to a subpoena issued by plaintiff's counsel. Plaintiff's counsel also failed to call him to the stand. Plaintiff contends that the witness was rendered unavailable by virtue of his employment with the adverse party. We cannot accept a characterization that such a witness is unavailable.
 
 
 13
 C. The Admissibility of Evidence of the Subsequent Collapse of the Rig
 
 
 14
 On cross-examination, the defendant asked the plaintiff's expert witness whether he had ever visited the rig in question. The witness responded that he had not. Plaintiff sought to present testimony that the witness had not done so because he had been told that the rig had subsequently collapsed. This testimony was excluded by the trial judge. Plaintiff contends that it was error to not admit this testimony as being outside the scope of the remedial actions exclusion, and as invited rebuttal testimony. Defendant counters with the contention that the rig in fact had not collapsed, and was simply being repaired for a short time before resuming full service, and that the testimony had no relevance and was highly prejudicial.
 
 
 15
 Whether or not the rig collapsed, or simply needed routine maintenance repairs, the exclusion of the testimony was not reversible error. The quality of the rig, both in terms of design and function, was never an issue in the case. The alleged negligence of the defendant was based on respondeat superior, for the negligence in the actions of its employee operating the hoist system. The sturdiness or design quality of the rig had nothing to do with the negligence alleged; the evidence sought to be admitted was thus highly prejudicial and lacking in probative value. The testimony of the witness was not improperly undermined, for the witness was allowed to testify to his extensive expertise and experience with respect to the type of rig in question, and plaintiff's complaint alleges nothing with respect to any particular rig. It was not reversible error, if indeed error at all, to decline to admit the testimony for either rehabilitation or invited rebuttal purposes.
 
 III.
 
 16
 For the reasons set forth above, we AFFIRM the judgment of the District Court and deny the motion for a new trial.
 
 
 
 [1]
 Plaintiff raises in his reply brief the issue of whether there were two drillers on the site when the accident occurred. The possible presence of the second driller is a red herring, for plaintiff has conceded that the accident occurred after a substantial amount of pipe had been laid on that shift. Since only one driller can operate the controls at a time, the driller from the previous shift is at best a possible witness on the scene. Nothing in the record before us, or submitted to the District Court, provides any support for a conclusion that the second driller was in fact a possible witness. To the extent that he was, however, our analysis with respect to the toolpusher would similarly apply to him and support the denial of the charge
 
 
 [2]
 The defense contends that it did not call the witness because of his deposition testimony that he had no recollection of the accident in question. Although certainly open to question, such a statement is consistent with the testimony of both plaintiff and others that the work day proceeded normally after the incident. More importantly, if plaintiff considered such testimony to be implausible and damaging to the defense, he was free to call the witness